ALTIMARI, Circuit Judge:
 

 Plaintiffs-appellants Nassau Boulevard Shell Service Station, Inc. (“Nassau Blvd. Shell”) and Bruce Mason, the station’s owner-operator, appeal from an order of the United States District Court for the Eastern District of New York (Glasser, J.) denying their motion for a preliminary injunction. Plaintiffs sought injunctive relief barring defendant Shell Oil Company (“Shell”) from terminating the franchise and lease agreement between Mason and Shell. On this appeal, plaintiffs contend that the district court erred in finding Shell’s notice of termination timely pursuant to the termination provisions of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2841 (1982) (“PMPA”). Plaintiffs also argue that the district court employed the wrong legal standard in denying their request for injunctive relief.
 

 Shell cross-appeals from the district court’s order denying its motion for a pre
 
 *361
 
 liminary injunction to compel Mason to vacate and surrender the premises leased to Mason by Shell. On this appeal, as in the district court, Shell argues that it was “automatically entitled” to the relief it sought upon the district court’s denial of the plaintiffs’ motion. For the reasons set forth below, we affirm the judgment of the district court.
 

 BACKGROUND
 

 Mason, as a franchisee of Shell, is engaged in the business of selling motor fuel and other petroleum products bearing Shell’s brand names and trademarks. The franchise agreement provides that Shell may terminate the franchise upon the occurrence of “fraud or criminal misconduct by [Mason] relevant to the operation of [his] station,” and for various other reasons. In addition, the PMPA provides statutory grounds for which a franchisor may terminate the franchise. 15 U.S.C. § 2802(b)(lHc)(12).
 

 Sometime in December 1987 or January 1988, Thomas Papadopoulos, another Shell franchisee, informed Shell that Mason, who was known by Papadopoulos to be a Shell dealer, had purchased gasoline at Papado-poulos’ Shell station using a Visa credit card issued to someone named “Brown.” Since the alleged impropriety did not involve a credit card issued by Shell, Shell referred the matter to the card’s sponsor— Goldome Visa. Goldome, in turn, notified the Nassau County Police Department (“the police”) who conducted an investigation of the incident.
 

 In May 1988, Mason was arrested “on suspicion of certain alleged credit card improprieties.” The police notified Shell of Mason’s arrest and informed them that a Visa credit card issued to Joan Brown may have been misappropriated at the Nassau Blvd. Shell Station by Mason. The police, however, did not disclose all of the details of their investigation of Mason to Shell.
 

 After receiving the news of Mason’s arrest, Shell tried to ascertain whether it had sufficient grounds to terminate Mason’s franchise. Shell determined that since the mere occurrence of an arrest, without a conviction, is not an indication of criminal culpability, it would be inappropriate to terminate Mason’s franchise without further inquiry. Toward that end, Shell first conducted a series of conversations with counsel for Mason during May and June. Then, on July 7, 1988, W.R. Davenport, the manager of Shell’s New York Retail Marketing District (“Davenport”), met with Mason. At this meeting, Mason related that he was “embarrassed” by the credit card incident and that he was “undergoing therapy.”
 

 On October 14, 1988, Shell issued Mason a formal Notice of Termination of his franchise and lease, effective January 24, 1989. The stated grounds for termination were: (1) failure to comply with provisions of the franchise which are reasonable and materially significant to the franchise relationship, 15 U.S.C. § 2802(b)(2)(A); and (2) the occurrence of a relevant event, including fraud, criminal misconduct, and knowing failure of the franchisee to comply with state laws relevant to the operation of the franchise, 15 U.S.C. § 2802(b)(2)(C), (c)(1) and (c)(ll).
 

 Both sides in this litigation made motions to the district court seeking preliminary injunctions. Mason sought to prevent the termination; Shell sought vacation and surrender of the leased premises. Judge Mishler granted Mason’s motion pending a hearing. The hearing was held on February 3, 1989, and at that time Judge Glasser denied both motions. On February 10, 1989, upon an emergency motion made by Mason, we granted a stay and expedited this appeal.
 
 Nassau Boulevard Shell Station, Inc. v. Shell Oil Co.,
 
 869 F.2d 23 (2d Cir.1989). At oral argument on March 1, 1989, we vacated the stay.
 

 DISCUSSION
 

 A.
 
 Denial of Nassau Blvd. Shell and Mason’s Motion.
 

 1.
 
 Timeliness of the termination.
 

 Under the PMPA, “[a] failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the
 
 *362
 
 franchise relationship,” is a ground for termination of the franchise. 15 U.S.C. § 2802(b)(2)(A). The PMPA also allows a franchisor to terminate a franchise upon the occurrence of certain specified events, including “fraud or criminal misconduct by the franchisee relevant to the operation of the marketing premises.” 15 U.S.C. § 2802(b)(2)(C) and (c)(1). In order to effect a termination under these provisions, however, the franchisor must have “first acquired actual or constructive knowledge [of the grounds for termination] not more than 120 days prior to the date on which notification of termination or nonrenewal is given.” 15 U.S.C. § 2802(b)(2)(A) and (b)(2)(C).
 

 Plaintiffs contend that the district court erred in finding that the 120-day period began on July 7, 1988. Specifically, they argue that the statutory termination period began, as a matter of law, in December 1987 or January 1988 when Shell first heard allegations concerning Mason’s misuse of a credit card. We disagree.
 

 The plaintiffs’ assertion that the 120 days begin to run as soon as a franchisor hears an allegation against a franchisee is at odds with the congressional intent in promulgating the PMPA. The “overriding purpose” of the PMPA is to establish “protection for franchisees from arbitrary and discriminatory terminations or nonrenewals.”
 
 Darling v. Mobil Oil Corp.,
 
 864 F.2d 981, 983 (2d Cir.1989) (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 15,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin. News 873, 874
 
 (“Senate Report
 
 ”)). The 120-day statutory period for effecting terminations established by section 2802(b)(2)(A) and (b)(2)(C) was imposed “to preclude a franchisor from basing termination or non-renewal upon old and long forgotten events.”
 
 Senate Report
 
 at 892. Without such a time limitation, franchisors could transform their knowledge of past incidents into credible threats of termination used to gain unfair advantage in negotiations and disputes. Cf
 
 . id.
 
 at 876-77. Thus, Congress acted to curb franchisors’ abuse of their ability to terminate franchises.
 
 See id.
 

 As the 120-day termination period was enacted to protect franchisees, it would be ironic if section 2802 subjected franchisees to unfair terminations. Yet, under plaintiffs’ construction, franchisors would be forced to terminate within 120 days of hearing a rumor about a franchisee.
 
 Cf. Rhea & Judy Little Brentwood Service, Inc. v. Shell Oil Co.,
 
 697 F.Supp. 958, 961 (M.D.Tenn.1988). An interpretation of section 2802 which fosters termination based on rumor or suspicion surely does not afford the protection from arbitrary and discriminatory terminations that Congress intended.
 

 The district court found that Shell first became aware of the grounds for terminating Mason’s franchise at the July 7, 1988 meeting between Mason and Davenport. During this meeting, Shell confronted Mason about the allegations concerning his misuse of a credit card. Rather than deny the allegations, Mason related that he was embarrassed by them and that he was seeking help. We agree that Shell first acquired the knowledge contemplated by section 2802(b)(2)(A) and (b)(2)(C) as a result of this conversation.
 

 As the district court noted, Shell acted “with great discretion^] restraint and prudence in attempting to assure itself that there was some basis for [the allegations] against Mr. Mason.” In passing the PMPA, Congress intended to promote, if not mandate, this type of careful approach to termination by franchisors. The practice of such discretion, restraint, and prudence goes a long way toward the prevention of arbitrary terminations by eliminating terminations based on idle rumors and baseless allegations.
 

 Prior to the July 7 meeting, Shell had reason to harbor suspicions about Mason. Mere suspicions, however, do not provide a franchisor with a basis for termination despite section 2802’s contemplation of “constructive knowledge.” By January 1988, the only information conveyed to Shell concerning a fraud by Mason was an allegation by Mason’s competitor that Mason used a credit card issued in the name “Brown” at the competitor’s station. Fur
 
 *363
 
 thermore, Mason’s arrest in May 1988 did not ripen Shell’s suspicions into knowledge of a ground for termination. Arguably, Shell could have perceived that the arrest by the police was based on probable cause, and thus the question of Shell’s knowledge is a close one. The information conveyed by the police to Shell at the time of arrest, however, was circumscribed. Shell was told only that Mason
 
 “may
 
 have misappropriated” a credit card at his station.
 

 Consistent with the legislative intent of the PMPA, we encourage prudence and patience in approaching franchise terminations. We believe that Shell took the proper course by trying to confirm its suspicions before effecting a termination. Accordingly, we agree with the district court’s finding that the notice of termination issued by Shell was timely.
 

 2.
 
 Application of the PMPA standards for a preliminary injunction.
 

 Plaintiffs contend that the district court erred by applying the wrong standard in denying their motion for a preliminary injunction. They argue that the district court required them to show “irreparable harm,” while under the PMPA they needed only to show greater comparative hardship than Shell. Because plaintiffs have failed to show “sufficiently serious questions going to the merits” of the litigation, however, we affirm the denial of their motion. Accordingly, we need not decide whether the district court improperly applied the irreparable harm standard.
 

 Under the PMPA, a court “shall” grant a preliminary injunction if a franchisee shows: (1) “the franchise of which he is a party has been terminated,” 15 U.S.C. § 2805(b)(2)(A)(i); (2) “there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation,” § 2805(b)(2)(A)(ii); and (3) “the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.” § 2805(b)(2)(B).
 

 Judge Glasser determined that it was unnecessary to balance the hardships in this case because he found that the hardship imposed on the plaintiffs did not amount to irreparable harm. Plaintiffs argue that no showing of irreparable harm was required. A substantial number of cases support this contention.
 
 See, e.g., Barnes v. Gulf Oil Corp.,
 
 824 F.2d 300, 306-07 (4th Cir.1987);
 
 Khorenian v. Union Oil Co.,
 
 761 F.2d 533, 535 (9th Cir.1985);
 
 Strasheim v. Amoco Oil Co.,
 
 659 F.Supp. 687, 691 (N.D.Ill.1987);
 
 Mobil Oil Corp. v. Vachon,
 
 580 F.Supp. 153, 156 (D.Mass.1983). In contrast, the approach taken by Judge Glasser finds support in the legislative history of the PMPA, which seems to equate hardship with irreparable harm:
 

 In utilizing [the balancing of hardships] standard for the grant of preliminary injunctive relief, the committee has embraced a judicial standard utilized by the Second Circuit. It should be noted that the most recent application of this standard by the Second Circuit
 
 (Jacobson & Co., Inc. v. Armstrong Cork Co.,
 
 [548 F.2d 438] (2d Cir. January 25, 1977) assumes that the plaintiff demonstrated the existence of extreme hardship
 
 (irreparable injury)
 
 [)].
 

 Senate Report
 
 at 899 (emphasis added). As noted above, however, it is unnecessary for us to resolve whether the district court improperly considered irreparable harm because plaintiffs did not raise “sufficiently serious questions going to the merits” as required by section 2805(b)(2)(A)(ii).
 

 A franchisee’s burden of proof under section 2805(b)(2)(A)(ii) is less severe “than is generally required under Rule 65 [of the Federal Rules of Civil Procedure].”
 
 Ewing v. Amoco Oil Co.,
 
 823 F.2d 1432, 1436 (10th Cir.1987);
 
 see also Wisser Co., Inc. v. Mobil Oil Corp.,
 
 730 F.2d 54, 56 (2d Cir.1984). In contrast to Rule 65, “which requires a movant to show a strong or reasonable likelihood of success, the PMPA requires only that a franchisee show a
 
 reasonable chance of success
 
 on the merits.”
 
 Moody v. Amoco Oil Co.,
 
 734 F.2d 1200,
 
 *364
 
 1216 (7th Cir.) (emphasis added),
 
 cert. denied,
 
 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed. 2d 321 (1984);
 
 see also Khorenian,
 
 761 F.2d at 535.
 

 In considering the plaintiffs’ claims, the district court found “that there [was]
 
 no likelihood of success
 
 on the merits” (emphasis added). The record fully supports this ruling. Thus, plaintiffs were “not entitled to a preliminary injunction regardless of the relative hardships,”
 
 Wisser,
 
 730 F.2d at 61, because they failed to present sufficiently serious questions going to the merits.
 

 B.
 
 Denial of Shell’s Motion.
 

 On its cross-appeal, Shell contends that the district court wrongly denied its application for immediate possession. Shell argues that a franchisor is “automatically entitled” to preliminary injunctive relief compelling a franchisee to vacate leased premises upon a district court’s denial of a franchisee’s motion pursuant to 15 U.S.C. § 2805. While this argument is of some appeal, we decline to adopt the
 
 per se
 
 rule urged upon us by Shell.
 

 Although “it is easier for a franchisee to obtain a preliminary injunction under [section 2805] than in the usual case,”
 
 Wisser,
 
 730 F.2d at 56, the PMPA contains no comparable provisions which lessen the burdens on franchisors. Nevertheless, Shell argues that an injunction should issue irrespective of whether a franchisor can satisfy the usual requirements because denials of injunction to both sides leaves the parties in “legal limbo.” Without a preliminary injunction, plaintiffs cannot compel Shell to maintain the franchise relationship. Why, then, Shell asks, should plaintiffs remain in possession of the leased premises?
 
 See Maintainis v. Shell Oil Co.,
 
 Bus. Franchise Guide (CCH) ¶ 8160 at p. 14,388, 14,-390 (D.Mass.1984) (“Congress intended to allow franchisees who met the statutory standard to remain in possession pending litigation, but the fact that it carefully delineated such a standard implies that franchisees not meeting the standard are not so protected.”).
 

 Although the answer to Shell’s question may seem apparent, we believe that it is more prudent to approach the repossession of service station premises case by case, rather than by the
 
 per se
 
 approach advanced by Shell. Under some circumstances, the proper course may be to order a franchisee to surrender premises to the franchisor.
 
 See Kim v. Mobil Oil Corp.,
 
 No. 85-4689 (C.D.Cal. July 16, 1986) (1986 WL 15779. It is not impossible, however, for a franchisee who has failed to satisfy the requirements of section 2805 to prevail after a full trial on the merits. Thus, the relief requested by Shell should not be granted “automatically” at a preliminary stage if the franchisor does not meet the traditional requirements for a preliminary injunction.
 

 In this case, the district court denied Shell’s motion for a preliminary injunction after finding that Shell failed to demonstrate irreparable harm. Our review of the record reveals that such denial was not an abuse of the district court’s discretion. Consequently, we affirm the judgment of the district court. In view of the circumstances as presented, however, the district court is directed to expedite the hearing for a permanent injunction.
 

 CONCLUSION
 

 For the reasons stated above, the judgment of the district court is affirmed.