Cecil L. PERSAUD, Plaintiff,

v.

EXXON CORPORATION, Defendant.

No. 94–CV–3089 (JS).

United States District Court,
E.D. New York.

Oct. 31, 1994.

Marvin E. Kramer & Associates, P.C. by Marvin E. Kramer, Garden City, NY, for plaintiff.

Keith S. Harriton, P.C. by Keith S. Harriton, White Plains Road, Tarrytown, NY, for defendant.

### OPINION AND ORDER

SEYBERT, District Judge:

This is an action brought against a franchisor under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2841 ["PMPA"], by an alleged franchisee of an automotive service station. Plaintiff Cecil L. Persaud, the franchisee in question, seeks to rescind a mutual termination and release agreement that he executed with Exxon Corporation ["Exxon"] on June 7, 1994 in exchange for approximately $9,600 in consideration. This agreement, among other things, provided for the termination of the subject franchise on June 30, 1994 at 12:00 noon, and, pursuant to the PMPA, accorded the plaintiff a seven-day window to repudiate. Plaintiff failed to cancel this agreement within the prescribed time period, and subsequently commenced this action seeking, *inter alia*, a preliminary injunction enjoining the agreement's enforcement.[1] Exxon, in turn, has cross-moved for a preliminary injunction to enforce the subject agreement, and to dismiss the complaint for lack of standing and lack of subject matter jurisdiction.

This matter was heard before the Court on July 19, 1994, and the record has been supplemented by the prior and subsequent submissions of the parties. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff Cecil L. Persaud is engaged in the business of operating an automotive service station and selling at retail Exxon's petroleum and automobile-related products. His principal place of business is located at 140 Vanderbilt Avenue, Brooklyn, New York. Persaud Aff. ¶ 2, at 1.

2. Defendant Exxon is a foreign corporation doing business and authorized to do business in the State of New York with a place of business at 1400 Old Country Road, Westbury, New York. Exxon has good title to the real property located at 140 Vanderbilt Avenue, Brooklyn, New York, and owns all improvements and petroleum marketing equipment situated thereon. Harriton Aff. ¶ 4, at 4.

3. Defendant Exxon is engaged in the marketing and distribution of petroleum products in the State of New York and throughout the United States. Among its activities, Exxon sells automotive gasoline and other products to service station dealers and leases service station premises to dealers under retail-service-station leases and sales agreements. *Id.* ¶ 5, at 4.

4. For a period commencing in or about April 1983 and continuing until approximately January 1, 1987, plaintiff Persaud was employed as a salesperson and supervisor at various gasoline service stations, including the Exxon service station located at 140 Vanderbilt Avenue, Brooklyn, New York ("the service station"). Tr. 4–6; Harriton Aff. ¶ 10, at 5.

5. For a period commencing in 1987 and running through and including June 30, 1994, South Lake Corporation was a retailer authorized or permitted, under a franchise agreement, to use the Exxon trademark in connection with the sale, consignment, or distribution of motor fuel at the service station. Tr. 20; Harriton Aff. ¶ 11, at 5.

6. Plaintiff Cecil L. Persaud was the president and sole shareholder of South Lake Corporation, a New York State corporation, incorporated on July 24, 1987. Tr. 20, 21; Letter from State of New York Department of State to Keith S. Harriton P.C., dated July 6, 1994 (94–CV–3089 July 26, 1994, docket entry # 15) (hereinafter "NYS Corporation Letter").

---

1. Plaintiff posted a $5,000 bond in connection with this application, and remains in possession of the subject premises.

7. South Lake Corporation was dissolved by proclamation on September 29, 1993. NYS Corporation Letter. Persaud never advised Exxon of this change in legal status. Tr. 22.

8. On October 7, 1992, South Lake Corporation and Exxon Company, U.S.A., a division of Exxon Corporation, entered into a lease of the service station in question for a term beginning on January 1, 1993 at 12:00 noon and ending on January 1, 1996 at 12:00 noon. The initial rental amount under the lease was $4,000 per month. This rental amount was subject to an $800 escalation by Exxon, upon sixty-days written notice. Harriton Aff., Ex. A, at 8. In addition, the lease incorporated by reference the rights accorded to the parties under the PMPA, including the right of Exxon, the lessor, to terminate the lease where "termination of a PMPA 'franchise' is permitted under the provisions of the Petroleum Marketing Practices Act (15 U.S.C. § 2801 et seq.)." *Id.* Ex. A, at 18.

9. The franchise agreement between South Lake Corporation and Exxon required South Lake Corporation to purchase certain amounts of gasoline on a monthly basis. South Lake Corporation, and the plaintiff, as its successor in interest, failed to purchase the required minimum monthly gallonage during each month from January 1993 through June 1994. Tr. 22; Harriton Aff. ¶¶ 24–25, at 7–8.

10. The parties have stipulated, for purposes of the applications pending before the Court, that the foregoing allegations of nonperformance by South Lake Corporation and Persaud constitute a valid basis for terminating the franchise in question pursuant to the PMPA. Tr. 22–23. Insofar as the termination provisions of the PMPA are incorporated by reference into the lease of the premises in question, *see supra* ¶ 8, Persaud therefore committed such acts as to accord Exxon the right to terminate the subject lease.

11. Persaud experienced financial difficulties and subsequently notified Richard A. Debree, a district manager for Exxon, and Gerard Rafferty, a territorial manager for Exxon, of his intention to bring on a partner. Rafferty informed Persaud that certain paperwork would be required, and that any proposed partner would have to take a reading and mathematics examination, and attend an Exxon training school. Tr. 7, 8, 61.

12. By letter dated April 13, 1994, Persaud notified Rafferty of his intention to bring on an individual named Neeranjan Naraine as a 25% shareholder of South Lake Corporation. Tr. 29, Ex. This letter is dated subsequent to South Lake Corporation's dissolution by proclamation.

13. Notwithstanding Persaud's letter dated April 13, 1994, on April 27, 1994, an individual who identified himself as Nahindranath Deonauth took the reading and mathematics examination required by Exxon. Tr. 33.

14. Notwithstanding the foregoing representations, an individual purporting the name of Maminder Singh was indicated as the proposed joint operator of the franchise in question on a subsequent application submitted by Persaud to Exxon during May 1994. Tr. 34.

15. The Court, in view of plaintiff's failure to submit documentary evidence or to call as witnesses the named individuals to corroborate his testimony that Naraine, Deonauth and Singh were the same person, Tr. 33–36, declines to credit this testimony, and finds that the three individuals in question were not one and the same. The Court further finds that Persaud misrepresented this fact to Exxon, and that this conduct constitutes an act of bad faith.

16. On or about June 5, 1994, Persaud, accompanied by his attorney, Marvin E. Kramer, Esq., met with Mr. Singh to discuss the terms of a joint venture agreement. At that meeting, a subsequent meeting was scheduled for the evening of June 7, 1994, at which time Persaud anticipated that the joint venture agreement would be executed. Persaud Aff. ¶ 8, at 2.

17. A meeting had been scheduled between Persaud, Rafferty and Debree on June 6, 1994 to discuss the subject franchise. Tr. 36, 66, 92–93. Persaud was unable to attend this meeting, however, and called the Exxon

office to inform the other individuals of the same. This meeting was rescheduled to the following day. Tr. 93–94.

18. The June 7, 1994 meeting between Persaud, Rafferty and Debree was held at an Exxon service station located near the corner of Pennsylvania and Pitkin Avenues in Brooklyn, New York. Tr. 38, 94. At this meeting, Debree spoke with Persaud about the deficiencies in the franchise's operations including such matters as unattained minimum gasoline purchase volumes, unpaid rent on the premises, and unpaid drafts drawn by Persaud which had been returned to Persaud for insufficient funds. Tr. 39, 94. Debree further indicated that Exxon would commence termination proceedings. Tr. 39, 96.

19. In response to Debree's assertions, Persaud displayed a bank deposit slip showing a recent bank deposit of $42,500. Persaud further displayed a copy of a check, drawn by an individual identified as Maminder Singh, in the amount of $35,000. Tr. 40, 94.

20. Debree then told Persaud that he should return to Singh his portion of the money. Tr. 41, 95–96. He further told Persaud that his business was failing, and that he should give back the money back before he spent it. Tr. 41. As of July 19, 1994, Persaud had not returned any monies to Singh. Tr. 41.

21. At that point, Debree produced an unexecuted document entitled "Mutual Termination Agreement and General Release Agreement" (hereinafter "Mutual Termination Agreement"). As an inducement for Persaud to sign the agreement, Debree offered to credit Persaud's account with two months rent, Tr. 41, an amount that, upon application of the escalation provisions of the subject lease, totalled $9,600. Tr.Ex. N.

22. The document referenced in the preceding paragraph provided in pertinent part:

### MUTUAL TERMINATION AGREEMENT AND GENERAL RELEASE AGREEMENT

In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Exxon Company, U.S.A., a division of Exxon Corporation, (herein called "EXXON") and *SOUTH LAKE CORPORATION* (herein called "DEALER") agree as follows:

1. To terminate and nonrenew, effective 12 o'clock noon *June 30th, 1994,* the franchise and franchise relationship (as those terms are used and defined in the Petroleum Marketing Practices Act, 15 U.S.C. 2801 et seq) existing between them and all instruments between them, including but not limited to: (a) Retail Service Station Lease; (b) Sales Agreement; (c) Automotive Credit Card Guide, and; (d) Credit Card Sale Imprinter Agreement, relating to retail auto store number *37890* located at *140 Vanderbilt Avenue, Brooklyn, NY 11205.*

2. To release each other, as of the effective date of this Agreement, from any and all claims or causes of action which each now has against the other (whether or not known to either), including but not limited to those arising directly or indirectly under, out of or in connection with each terminated instrument, or any sales or deliveries of petroleum products, tires, batteries, and/or accessories by EXXON to DEALER, EXCEPTING, HOWEVER, claims of each party against the other for trade accounts, rental payments, reimbursement, indemnification, and obligations arising under promissory notes or security agreements, and FURTHER EXCEPTING any claims of EXXON relating to real or personal property now or heretofore in DEALER'S possession.

3. DEALER acknowledges that EXXON has made no representations, oral or otherwise, with respect to DEALER'S ability to secure another source of supply of motor fuel after the effective date of this Agreement or the terms of any such supply arrangement.

4. DEALER shall be responsible for, and shall indemnify and hold EXXON harmless from and against any and all claims, demands, liabilities, or causes of action whatsoever related to any Bulk Sales Act or any claim arising thereunder.

5. EXXON hereby confirms to and notifies DEALER of the termination and nonrenewal of the franchise and/or franchise relationship

in effect between them, effective on the effective date of this Mutual Termination and General Release, based on this mutual agreement.

6. This writing contains the entire agreement and understanding between DEALER and EXXON pertaining to this Mutual Termination and General Release Agreement and there are no oral representations, stipulations, warranties or understandings relating thereto which are not fully set forth therein. No amendment, addition to or alteration, modification or waiver or any provision of this Mutual Termination and General Release Agreement shall be of any force or effect unless in writing and signed by DEALER and an authorized representative of EXXON.

7. This writing in no way modifies, affects, or conditions any Notice of Nonrenewal or Termination which EXXON has previously given DEALER or which it may give to DEALER in regard to the referenced agreements and relationship.

8. DEALER hereby warrants that he has carefully read this instrument, understands all of its terms, and has voluntarily executed this instrument with full knowledge of its significance.

9. This agreement is executed in duplicate originals.

EXXON COMPANY, U.S.A.
(a division of Exxon Corporation)

G.R. Rafferty (signed)        By: Richard Debree (signed)
　　WITNESS

EXECUTED BY DEALER on the _7_ Day of June, 1994.

G. Rafferty (signed)        Cecil Persaud (signed)
　　WITNESS　　　　　　　　　DEALER

I acknowledge that a fully executed copy of this "Mutual Termination and General Release Agreement," together with a copy of the Official Summary of Title I of the Petroleum Marketing Practices Act, as published in the *Federal Register*, Volume 43, No. 169, was received by me on the *7th* Day of *June*, 1994.

I understand that after the effective date of this agreement, that except for certain matters referred to in Paragraph 2, EXXON will have no further obligations to me whatsoever.

G. Rafferty (signed)        Cecil L. Persaud (signed)
　　WITNESS　　　　　　　　　DEALER

Tr.Ex.

23. Debree walked Persaud through the provisions of the foregoing document, and wrote thereon, in Persaud's presence, the date of June 30, 1994 as the termination date of the franchise. Tr. 98, Ex. Debree also told Persaud that he should show this document to his attorney. Tr. 46, 98. Debree further told Persaud that if he did not sign the document, Exxon would commence termination proceedings, and that such proceedings would be costly to both Exxon and Persaud. Tr. 99.

24. The Mutual Termination Agreement thereupon was executed in duplicate, and one of the duplicate originals was provided to Persaud. In connection with said execution, as indicated in ¶ 22 *supra*, Persaud signed his name in two places: once to indicate his assent to the agreement, and once to acknowledge his receipt on June 7, 1994 of "a fully executed copy of [the] 'Mutual Termination and General Release Agreement,' together with a copy of the Official Summary of Title I of the Petroleum Marketing Practices Act, as published in the *Federal Register*, Volume 43, No. 169." Tr.Ex. Persaud's signatures were witnessed by Rafferty. *Id.*

25. The Court finds that annexed to the duplicate original of the Mutual Termination Agreement that was provided to Persaud was a five-page summary of his rights under Subchapter I of the PMPA. Tr. 101. In this regard, the Court does not credit Persaud's testimony that he never received a copy of this summary. Tr. 13. In reaching this determination, the Court notes that Persaud's in-court testimony contradicts his written acknowledgment on page 2 of the Mutual Termination Agreement concerning his receipt of this document. Persaud does not dispute the authenticity of his signature. Tr. 44. Moreover, Persaud's in-court testimony directly contradicts his sworn affidavit, filed in conjunction with his "Order to Show Cause for Preliminary Injunction and Temporary Restraining Order," dated June 28,

1994 (94–CV–3089, docket entry #2), in which he attests to his receipt at the meeting in question of a summary of the PMPA, which his attorney annexed as Exhibit C thereto. Persaud Aff. ¶ 14, at 4.

26. The Court further finds that Persaud, in executing the foregoing written acknowledgment on page 2 of the Mutual Termination Agreement concerning his receipt of a five-page summary of his rights under subchapter I of the PMPA, knew exactly what document he was referring to at the time of said execution. In further support of this inference is Persaud's in-court testimony in which he concedes that he had received the same summary of his rights pursuant to the PMPA at the time he renewed his franchise. Tr. 19–20. Persaud renewed his franchise with Exxon Corporation prior to January 1, 1993. Tr. 18.

27. In view of the absence of persuasive evidence to the contrary, the Court finds that no language barrier existed, attendant to Persaud's status as an immigrant to the United States from South America, Tr. 4, which caused Persaud not to understand the import of the representations made to him by Debree and Rafferty during the June 7, 1994 meeting.

28. Page 2 of the annexed summary of PMPA rights with which Persaud was provided at the June 7th meeting reads in pertinent part:

> Mutual Agreement to terminate the franchise. A franchise can be terminated by an agreement in writing between you and your supplier if the agreement is entered into not more than 180 days before the effective date of the termination and you receive a copy of this agreement, together with this Summary statement of your rights under the Act. You may cancel the agreement to terminate within 7 days after you receive a copy of the agreement, by mailing (by certified mail) a written statement to this effect to your supplier.

Tr.Ex.

29. The Court finds that during the meeting of June 7, 1994 between Persaud, Rafferty, and Debree, neither Rafferty nor Debree represented to Persaud that, notwithstanding Persaud's execution of the Mutual Termination Agreement, he nevertheless would be given time to improve sales at the service station. In this regard, the Court declines to credit any testimony given by Persaud to the contrary. Tr. 42–46.

30. The Court expressly finds that neither Rafferty nor Debree, nor a combination thereof, improperly pressured Persaud into executing the Mutual Termination Agreement.

31. The Court expressly finds that neither Rafferty nor Debree, nor a combination thereof, misrepresented a material fact to Persaud in connection with his execution of the Mutual Termination Agreement.

32. The Court expressly finds that Persaud did not execute the Mutual Termination Agreement under a mistake of fact concerning his ability to rescind said agreement after the 7–day repudiation period.

33. During the evening hours of June 7, 1994—the same day that he signed the Mutual Termination Agreement—Persaud met with his attorney and Mr. Singh for the purpose of executing an agreement to admit Singh as a shareholder of South Lake Corporation. At this meeting, Persaud failed to advise either his attorney or Singh of the Mutual Termination Agreement, which he had executed earlier that day. Tr. 46–48.

34. On June 20, 1994, after the seven-day window for Persaud to repudiate the agreement had expired, Exxon mailed a certified letter, return receipt requested, to South Lake Corporation at the service station address of 140 Vanderbilt Avenue, Brooklyn, New York. The letter reads in pertinent part:

> Please refer to the Mutual Termination Agreement and General Release Agreement of the instruments and relationship between you and Exxon in regard to the above-referenced location, which notice was executed on June 7, 1994 and has an effective date of *June 30, 1994.*
>
> This letter is a reminder that you will be required to surrender the premises to Exxon at 12 o'clock noon on *June 30, 1994,*

as set forth in the referenced notice previously issued to you.

If you have any questions, please feel free to contact your Territory Manager, G.R. Rafferty at 516–876–4648. Attached is another true and correct copy of the Official Summary of the Petroleum Marketing Practices Act, as published in the Federal Register, Volume 169, No. 43.

Tr.Ex.

35. On or about June 22, 1994, Rafferty telephoned Persaud to confirm that he had received the foregoing letter. After Persaud stated over the telephone that he had not received this letter, Rafferty travelled to Persaud's service station, where he confirmed that Persaud indeed had received it. Tr. 72.

36. On or about June 23, 1994, Persaud called Rafferty "begging" that Exxon grant him an extension of the franchise. Tr. 49. No commitment or affirmative representation was made by Rafferty or by Debree to Persaud at this time, or at any time thereafter, either in writing or orally, concerning Persaud's ability to retain his franchise after June 30, 1994. Tr. 74–75. With respect to this matter, conflicting testimony was presented at the hearing by Persaud and Rafferty concerning statements that Rafferty allegedly made to Persaud during the referenced telephone conversation. Persaud testified that, in response to his request for an extension, Rafferty told him "we'll see." Tr. 49. Rafferty, in turn, denies having made any statement implying that a second chance would be given. Tr. 75. In view of the testimony presented, and the Court's credibility assessments, the Court finds that no representation was made by Rafferty or Debree to Persaud, at any time subsequent to his execution of the Mutual Termination Agreement, upon which he could have formed a reasonable belief that Exxon would not seek to terminate the franchise in question on June 30, 1994 at 12:00 noon.

37. The instant action subsequently was commenced on June 29, 1994.

## CONCLUSIONS OF LAW/DISCUSSION

### I. Threshold Issues

Before considering the substantive merits of the pending applications for preliminary injunctive relief, the Court first must address two separate threshold issues raised by the defendant. Specifically, defendant Exxon asserts that Persaud's complaint should be dismissed alternatively for lack of standing, or because this Court lacks subject matter jurisdiction over the controversy in question. The Court will address each of these assertions in turn.

A. *Motion to Dismiss for Lack of Standing/Motion to Amend Complaint*

Defendant Exxon Corporation moves to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff Persaud lacks standing to bring his asserted claims. Specifically, Exxon contends that because it was not Persaud who was a party to the franchise relationship, but rather South Lake Corporation, plaintiff "lacks 'a personal stake in the outcome of [the] case,'" and therefore this action is not justiciable. *National Casualty Co. v. Jordache Enters.*, 848 F.Supp. 1112, 1119 (S.D.N.Y.1994) (quoting 12 James W. Moore et al., Moore's Federal Practice ¶ 300.02[2], at 1–13 (2d ed. 1993)). In support of its contention, defendant cites section 2805(a) of the PMPA which solely authorizes a "franchisee" to maintain a civil action against the franchisor. 15 U.S.C. § 2805(a). Defendant then directs the Court's attention to the documentation attached to the complaint indicating that the franchisee in question is South Lake Corporation.

In response to the defendant's contention, plaintiff has moved to amend his complaint to substitute South Lake Corporation for himself as a party to this action pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. "In order for an application to [amend] a pleading to be denied, the nonmovant must demonstrate either bad faith on the part of the moving party, the futility of the claims asserted within the application, or undue prejudice to the nonmovant." *Katzman v. Sessions,* 156 F.R.D. 35, 38 (E.D.N.Y.1994). Defendant is unable to

make the requisite showing at this juncture of the litigation. Furthermore, consistent with the problem-solving approach of Rule 21 of the Federal Rules of Civil Procedure, which allows a federal district court to add or drop parties "on such terms as are just," Fed.R.Civ.P. 21, the Court finds that Exxon would not be prejudiced by the substitution of South Lake Corporation as party plaintiff in lieu of Persaud.[2] *See Mathis v. Bess,* 761 F.Supp. 1023, 1026 (S.D.N.Y.1991) ("Although Rule 25 provides for substitution of parties in limited circumstances, parties may be substituted under Rule 21 in the discretion of the court in situations not covered by Rule 25."); *see also* Fed.R.Civ.P. 17(a) (Joinder or substitution of the real party in interest "shall have the same effect as if the action had been commenced in the name of the real party in interest."). Therefore, the Court hereby ORDERS the substitution of South Lake Corporation as party plaintiff for Cecil L. Persaud.[3] Accordingly, Exxon's motion to dismiss the complaint for lack of standing is denied as moot.

B. *Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction*

■ Defendant Exxon further moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Specifically, Exxon asserts in its post-hearing brief that because it has met the statutory requirements for a mutual termination under 15 U.S.C. § 2802, the plaintiff is left without a cause of action under the PMPA, thereby extinguishing the Court's subject matter jurisdiction.

15 U.S.C. § 2805(a) provides that "[i]f a franchisor fails to comply with the requirements of [15 U.S.C. § 2802 or 2803], the franchisee may maintain a civil action against such franchisor." 15 U.S.C. § 2805(a). It is undisputed that Exxon Corporation and South Lake Corporation, under the PMPA, stand as franchisor and franchisee with respect to the franchise in question. In addition, § 2802(b)(2)(D) authorizes a franchisor to terminate a franchise pursuant to a mutual agreement in writing between the franchisor and the franchisee where certain conditions have been met.

Persaud asserts in his complaint, *inter alia,* that he was fraudulently induced by Exxon's agents to execute the mutual termination agreement in question. Through this assertion, he challenges whether Exxon executed the mutual termination agreement in good faith. The Court regards this assertion to come within the purview of the PMPA, and thereby vest this Court with subject matter jurisdiction to adjudicate this controversy. Accordingly, defendant's motion is denied.

## II. Applications for Preliminary Injunctive Relief

### A. *Application by Persaud*

Plaintiff Cecil L. Persaud moves pursuant to 15 U.S.C. § 2805 for a preliminary injunction enjoining the defendant, and its agents, from interfering with his operation of the service station in question. Specifically, he seeks a preliminary injunction enjoining Exxon Corporation from terminating his franchise pursuant to the Mutual Termination Agreement that he executed on June 7, 1994.

■ 15 U.S.C. § 2805(b)(1) authorizes a court to grant such equitable relief, including injunctive relief, "as the court determines is necessary to remedy the effects of any failure to comply with the requirements of [15 U.S.C. § 2802 or 2803]." 15 U.S.C. § 2805(b)(1). In connection therewith, § 2805(b)(2) directs the entry of a prelimi-

---

2. Rule 21 of the Federal Rules of Civil Procedure, entitled "Misjoinder and Non–Joinder of Parties," provides as follows:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

3. To maintain consistency throughout this Opinion and Order, the Court will continue to refer to Persaud as the plaintiff in this action. In all subsequent filings with the Court, the parties are directed to adjust the caption, and all references within their papers, to indicate South Lake Corporation as the plaintiff.

nary injunction if a three-part showing has been made. First, the franchisee must show that "the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed." 15 U.S.C. § 2805(b)(2)(A)(i). Second, the franchisee must show that "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2)(A)(ii). Last, the court must determine "that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted." 15 U.S.C. § 2805(b)(2)(B).[4]

It is uncontroverted that the first prong of this three-part test has been satisfied through the putative expiration of the franchise relationship pursuant to the Mutual Termination Agreement. Accordingly, the Court will now direct its attention to the remaining two prongs of this analysis.

### 1. Sufficiently Serious Questions Going to the Merits

Plaintiff contends that he is able to show sufficiently serious questions going to the merits to establish a fair ground for litigation. Plaintiff raises two separate bases for this assertion. First, he claims that Exxon fraudulently induced him to execute the Mutual Termination Agreement. Second, he contends that Exxon failed to provide sufficient notice of termination in accordance with the PMPA.

#### a. Allegations of Fraud

■ Plaintiff asserts that, at the meeting on June 7, 1994 with Exxon employees Gerard Rafferty and Richard Debree, he was fraudulently induced to sign the Mutual Termination Agreement, and that a sufficiently meritorious question arises concerning his ability to rescind this agreement.

■ The Court's factual findings do not support the plaintiff's allegations. In order to succeed on a claim of fraud, Persaud must show that Exxon, through its agents, made a misrepresentation as to a material fact which was false and known to be false by Exxon. Moreover, Persaud must show that such statement was made for the purpose of inducing Persaud to rely thereon, that Persaud rightfully did so rely in ignorance of the statement's falsity, and that he was injured as a result of such reliance. *See Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987) (citing *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980)). Plaintiff fails to make the requisite showing. As earlier discussed, plaintiff has conceded that Exxon, at the time of the June 7th meeting, had ample grounds to commence a proceeding to terminate the subject franchise. Consequently, the representations made by Debree and Rafferty concerning Exxon's ability to commence such proceedings were soundly premised, and plaintiff therefore is unable to establish both the material misrepresentation and *scienter* elements necessary to succeed on a fraud claim.

■ As a corollary to the foregoing discussion, the Court further finds that the plaintiff presents no serious question giving rise to rescission on the basis of either (a) a unilateral mistake by Persaud, or (b) duress or overreaching on the part of Exxon. In order for an agreement to be rescinded "on the basis of a unilateral mistake, a party must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was

---

**4.** This tripartite analysis for franchisees under the PMPA is less rigorous than the ordinary standards governing the issuance of a preliminary injunction. *See Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 56 (2d Cir.1984). The PMPA does not expressly require that the franchisee establish irreparable harm. In addition, "[a] franchisee's burden of proof under section 2805(b)(2)(A)(ii) is less severe than is generally required under Rule 65 of the Federal Rules of Civil Procedure. In contrast to Rule 65, 'which requires a movant to show a strong or reasonable likelihood of success, the PMPA requires only that a franchisee show a *reasonable chance of success* on the merits.'" *Nassau Blvd. Shell Serv. Station, Inc. v. Shell Oil Co.*, 875 F.2d 359, 363 (2d Cir.1989) (emphasis in original) (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984)) (additional internal quotation omitted).

being made." *Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769, 795 (S.D.N.Y.1993). The evidence adduced does not support either factual requirement. In addition, Persaud's assertion that he was improperly pressured to execute the agreement is similarly unavailing in view, among other things, of his seven-day window to repudiate the agreement.

Simply stated, Persaud's concurrent schemes to bring on a joint venturer without Exxon's consent, and to conceal the Mutual Termination Agreement from both his attorney and his prospective joint venturer, render his allegation of bad faith on the part of Exxon highly disingenuous. The Court finds that it was Persaud's own device which permitted the seven-day cancellation period to lapse without rescission. Accordingly, in view of the facts and circumstances of this case, the Court concludes that Persaud's allegations of fraud—or of duress or unilateral mistake, for that matter—do not present sufficiently meritorious questions to establish a fair ground for litigation.

### b. *Allegation of Insufficient Notice Pursuant to the PMPA*

▇ Plaintiff further asserts that the Mutual Termination Agreement is legally void because Exxon, in contravention of 15 U.S.C. § 2802(b)(1)(A), and specifically, 15 U.S.C. § 2804(a)(2), failed to notify him that the franchise would terminate at least 90 days before the scheduled termination date. Defendant, in turn, contends that § 2804(a)(2) is inapplicable, and that the 23 days notice that Persaud received was appropriate under § 2804(b)(1), which abrogates the 90–day requirement "[i]n circumstances in which it would not be reasonable for the franchisor to furnish notification...." 15 U.S.C. § 2804(b)(1).

The starting point for the Court's analysis of this question is § 2802(a). Implementing congressional objectives "to establish 'minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel,'" *Mobil Oil Corp. v. Karbowski,* 879 F.2d 1052, 1055 (2d Cir.1989) (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 15 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 873 [hereinafter *Senate Report* ] ), section 2802(a) sets forth a general prohibition against a franchisor's termination or nonrenewal of the franchise relationship "[e]xcept as provided in [§§ 2802(b) and 2803]."[5] 15 U.S.C. § 2802(a).

Section 2802(b)(1) sets forth two distinct requirements that must be met in order for a franchisor to terminate a franchise that has been entered into after June 19, 1978. First, the franchisor must meet the notification requirements of § 2804. *See* 15 U.S.C. § 2802(b)(1)(A). Second, if a franchise is terminated, such termination must be "based upon a ground described in [§ 2802(b)(2) ]." 15 U.S.C. § 2802(b)(1)(B).

Examining these requirements in reverse order, section 2802(b)(2)(D) permits a franchise relationship to be terminated pursuant to a written agreement provided that certain criteria have been met. Specifically, the following elements must be established:

An agreement, in writing, between the franchisor and the franchisee to terminate the franchise or not to renew the franchise relationship, if—

(i) such agreement is entered into not more than 180 days prior to the date of such termination or, in the case of nonrenewal, not more than 180 days prior to the conclusion of the term, or the expiration date, stated in the franchise;

(ii) the franchisee is promptly provided with a copy of such agreement, together with the summary statement described in [15 U.S.C. § 2804(d) ]; and

(iii) within seven days after the date on which the franchisee is provided a copy of such agreement, the franchisee has not posted by certified mail a written notice to the franchisor repudiating such agreement.

15 U.S.C. § 2802(b)(2)(D).

The Mutual Termination Agreement executed between Persaud and Exxon Corporation on June 7, 1994 satisfies each of the requirements of § 2802(b)(2)(D). First, the agreement was executed 23 days before the designated June 30, 1994 termination date,

---

**5.** 15 U.S.C. § 2803, entitled "Trial and interim franchises," is inapplicable to the instant action.

and therefore falls within the 180–day statutory parameter. Second, Persaud was provided with a copy of the agreement, together with the PMPA summary statement, during the June 7, 1994 meeting. *See supra* Findings of Fact ¶ 25. Finally, Persaud failed to repudiate the agreement within the seven-day statutory period. *See id.* ¶ 34.

Turning to the remaining requirement of notice, section 2804 sets forth the notification criteria governing a franchisor's termination of a franchise relationship. Pertinent to this action, § 2804(a) sets forth the general rule that, except as otherwise provided in § 2804(b), the franchisor shall furnish notification of termination "not less than 90 days prior to the date on which such termination ... takes effect." [6] 15 U.S.C. § 2804(a)(2).

Congress, however, recognizing the legitimate interest of a franchisor to terminate a franchise where a franchisee's contractual violation is " 'so serious as to undermine the entire franchise relationship,' " *Mobil Oil,* 879 F.2d at 1055 (quoting *Senate Report, supra,* 1978 U.S.C.C.A.N. at 876), has carved out an exception to the requirement of 90 days notice. The pertinent statutory provision is set forth in § 2804(b)(1), and reads in pertinent part:

In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination ... takes effect, as required by [§ 2804(a)(2) ]—such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable....

15 U.S.C. § 2804(b)(1), (A).

The legislative history behind this provision suggests that Congress intended, in appropriate circumstances, to provide for termination upon less than 90 days notice. The Senate Report indicates as follows:

Section 104 generally requires that 90 day advance notification of termination or nonrenewal be made in writing and posted by certified mail or personally delivered to the franchisee. *Less than 90 days notice is permitted if reasonable under the circumstances.*

*Senate Report, supra,* 1978 U.S.C.C.A.N. at 898 (emphasis added).

For purposes of the notice provisions of § 2804(b)(1), the Court finds that June 7, 1994—the date that the Mutual Termination Agreement was executed—constituted the earliest date on which furnishing the required notification was reasonably practicable, and that proper notice, in accordance with § 2804(c), was furnished by Exxon to Persaud on that date. *See supra* footnote 6. Accordingly, the precise issue before the Court is whether it was *reasonable under the circumstances* for Exxon to provide Persaud with 23 days notice of termination.

The text of the PMPA sheds some light on the circumstances in which Congress considered termination on less than 90 days notice to be reasonable. For example, § 2802(b)(2)(A)(ii) authorizes the termination of the franchise relationship on less than 90 days notice where the franchisee fails to comply with any provision of the franchise that "is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure ... [less than 61] days prior to the date on which notification of termination ... is given." 15 U.S.C. § 2802(b)(2)(A)(ii). In addition, termination or nonrenewal upon less than 90 days notice is permitted pursuant to § 2802(b)(2)(C)(ii) upon "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the

---

**6.** Section 2804(a)(1) also requires that the franchisor provide notification of termination to the franchisee in the manner set forth in § 2804(c). Under § 2804(c), such notification must be (1) in writing, (2) posted by certified mail or personally delivered to the franchisee, and (3) must "contain (A) a statement of intention to terminate the franchise ... together with the reasons therefor; (B) the date on which such termination ... takes effect;" and (C) a copy of the PMPA summary statement. 15 U.S.C. § 2804(c). The Court finds that Debree and Rafferty's personal delivery to Persaud of the Mutual Termination Agreement on June 7, 1994 conforms to these requirements. In addition, the Court regards the recitation and concomitant existence of a bargained-for exchange to satisfy the requirement that the reasons for the termination be articulated.

period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence ... [less than 61 days] prior to the date on which notification of termination ... is given." 15 U.S.C. § 2802(b)(2)(C)(ii).

■ Decisional authority further supports the conclusion that a termination of a franchise relationship on significantly less than 90 days notice, pursuant to a mutual agreement, may be reasonable under the PMPA. *See Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 56, 60 (2d Cir.1984) (upholding forthwith notice of termination in accordance with franchise agreement, pursuant to both 15 U.S.C. §§ 2802(b)(2)(A)(ii) and 2802(b)(2)(C)(ii)); *see also, Rowe v. Amoco Oil Co.*, 723 F.2d 911 (6th Cir.1983) (Table), 1983–2 Trade Cases (CCH) ¶ 65,739, at 69,776 (upholding mutual termination agreement providing for 30 days notice). Plaintiff fails to bring any authority to the Court's attention that contradicts the appropriateness of this determination.

Turning to the instant case, in light of the Court's factual findings, including Persaud's substantially deceptive conduct towards Exxon throughout the sixty-day period leading up to his notice of termination on June 7, 1994 in connection with his execution of the Mutual Termination Agreement, the Court holds that it was reasonable under the circumstances for Exxon to provide Persaud with 23 days notice of the termination of his franchise. 15 U.S.C. § 2804(b)(1). The Court moreover finds that the foregoing conduct constituted (i) a failure to comply with a provision of the franchise that was "reasonable and of material significance to the franchise relationship," within the meaning of § 2802(b)(2)(A), and (ii) an "event which is relevant to the franchise relationship" justifying termination, within the meaning of § 2802(b)(2)(C). Accordingly, in light of the Court's prior determination within this Opinion and Order that Persaud may not rescind the Mutual Termination Agreement on equitable grounds, in addition to the statutory notice grounds herein addressed, the Court concludes that the franchisee is unable to

make the requisite showing that "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2)(A)(ii). Consequently, plaintiff's application for a preliminary injunction must be denied.

## 2. *Relative Balance of Hardships*

■ The third prong of the preliminary injunction analysis under § 2805(b)(2) requires the court to "determine[ ] that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted." 15 U.S.C. § 2805(b)(2)(B). For purposes of completing the record, the Court holds that Persaud fails to establish a balance of hardships in his favor in view, among other things, of his stipulation that grounds exist for Exxon to conduct successful termination proceedings against him. Consequently, it is likely that Persaud would remain a franchisee of Exxon for only a minimal period of time. In addition, it is highly likely that Exxon would sustain injury during any additional period that Persaud remained on the premises. Such injury would manifest, at the very least, in the form of lost profits derived from the sale of gasoline. A further hardship to Exxon exists through the potential erosion of its goodwill on account of public perception of an ineffectively-managed service station. In sum, therefore, the relative balance of hardships among the parties provides an independent basis to deny Persaud's application for preliminary injunctive relief.

## B. *Applications by Exxon*

Defendant Exxon Corporation cross-moves for a preliminary injunction to enjoin the plaintiff from holding over on the premises in question, and to prevent the plaintiff from obstructing Exxon's entry onto said premises to remove Exxon equipment and all items bearing Exxon insignia.[7]

---

7. Exxon also cross-moves for an order requiring the plaintiff to remit certain rental payments. This request will be held in abeyance pending a

subsequent application to the Court documenting the specific pecuniary relief requested.

As a threshold matter, the Court notes that the Second Circuit Court of Appeals has rejected the use of a *per se* approach with respect to cross-motions brought by the franchisor after the franchisee's application for preliminary injunctive relief has been denied. Recognizing that it is not impossible for a franchisee who has failed to satisfy the requirements of section 2805 to prevail after a full trial on the merits, the Second Circuit has held that the relief requested by the franchisor "should not be granted 'automatically' at a preliminary stage if the franchisor does not meet the traditional requirements for a preliminary injunction." *Nassau Blvd. Shell Serv. Station, Inc. v. Shell Oil Co.*, 875 F.2d 359, 364 (2d Cir.1989).

Further, the relaxed preliminary injunction standard that is available to franchisees under the PMPA may not be used by Exxon in its capacity as a franchisor. As the Second Circuit Court of Appeals has stated, "[a]lthough 'it is easier for a franchisee to obtain a preliminary injunction under section 2805 than in the usual case,' the PMPA contains no comparable provisions which lessen the burdens on franchisors." *Id.* (quoting *Wisser,* 730 F.2d at 56). Accordingly, the traditional standard of the Second Circuit must be employed to determine whether Exxon is entitled to preliminary injunctive relief.

"To obtain a preliminary injunction, a [movant] must demonstrate: (1) *either* a likelihood that he will succeed on the merits of his claim, *or* that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the [movant]; and (2) that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim." *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir.1994) (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 135–36 (2d Cir.1992); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985)).

■ The Court holds that Exxon is entitled to preliminary injunctive relief with respect to both its cross-motion to enjoin the plaintiff from holding over on the premises in question, and its cross-motion to prevent the plaintiff from obstructing Exxon's entry onto such premises to remove Exxon equipment and all items bearing Exxon insignia. For many of the same reasons explicated within the Court's discussion of Persaud's application for a preliminary injunction, the Court finds that Exxon is likely to prevail on the merits of its cross-claim that the mutual termination of plaintiff's franchise was proper under the PMPA. Concomitantly, the Court finds that Exxon is likely to prevail on the merits of its cross-claim that Persaud is required to surrender the premises pursuant to the subject lease. *See supra* Findings of Fact ¶¶ 8, 10.

The Court further finds that, without a preliminary injunction, Exxon will suffer irreparable harm before the Court can rule on its claim. Plaintiff's continued occupation of Exxon's property and use of its equipment deprives Exxon of the ability to make productive use of this site. In addition, in the absence of a court order, Exxon would face substantial risks through its immediate inability to exercise control and supervision over the gasoline tanks, pumps and related equipment located at the service station. Further, a denial of injunctive relief would expose Exxon to liability resulting from plaintiff's continued use of its equipment and property. Accordingly, Exxon's request for preliminary injunctive relief is granted.

## CONCLUSION

In accordance with the foregoing, the Court enters the following orders in this action:

(1) South Lake Corporation is substituted as party plaintiff for Cecil L. Persaud.

(2) Exxon's motion to dismiss the complaint for lack of standing is DENIED as moot.

(3) Exxon's motion to dismiss the complaint for lack of subject matter jurisdiction is DENIED.

(4) Plaintiff's application for preliminary injunctive relief is DENIED in its entirety.

(5) Exxon's cross-motion for preliminary injunctive relief to enjoin the plaintiff from holding over on the premises in question, and to enjoin the plaintiff from obstructing Exxon's entry onto said premises to remove Exx-

on equipment and all items bearing Exxon insignia, is GRANTED.

(6) Plaintiff is ordered to vacate the premises in question by November 4, 1994 at 12:00 noon.

(7) Exxon's cross-motion for an order requiring the plaintiff to remit certain rental payments is held in abeyance pending a subsequent application to the Court documenting the specific pecuniary relief requested.

(8) The parties are directed to appear before the Court for a status conference on November 18, 1994 at 4:30 P.M. in Courtroom 12 of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York.

SO ORDERED.